UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONSUMERS COUNCIL OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV1682 JCH |
| | ) | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Consumers Council of Missouri's Motion for Attorneys' Fees, filed June 4, 2015. (ECF No. 28). The motion is fully briefed and ready for disposition.

## BACKGROUND

On August 20, 2014, Plaintiff Consumers Council of Missouri submitted a Freedom of Information Act ("FOIA") request to the FOIA Division Director for the Centers for Medicare & Medicaid Services ("CMS") within Defendant Department of Health and Human Services ("HHS"). Plaintiff's FOIA submission requested the following: (1) the identities of the insurers filing rates for the State of Missouri, to take effect in 2015; (2) the rates such insurers proposed to charge in 2015; (3) the information contained in Parts I and III of the Rate Filing Justifications ("RFJs")[1] that was not designated as a trade secret or confidential commercial or financial

---

[1] 45 C.F.R. § 154.215(a) provides that a health insurer must submit an RFJ "for all products in the single risk pool, including new or discontinuing products". 45 C.F.R. §§ 154.215(b)-(f) describe the content of the RFJ, including (1) the unified rate review template (Part I), which includes historical and projected claims experience; (2) a written description justifying the rate increase (Part II); and (3) an actuarial memorandum (Part III), which includes the assumptions, projections, and calculations on which the proposed rate increase is based.

information by the insurers; and (4) the information contained in Part II of the RFJs.[2]

On September 2, 2014, the CMS FOIA Director sent Plaintiff a form letter acknowledging receipt of Plaintiff's FOIA request. The provided FOIA tracking information stated that the request was received by the agency on August 26, 2014. In the September 2 letter, Division Director Hugh Gilmore warned that "the following unusual and exceptional circumstances [] will impact our response time: (1) we will need to search for and collect records from components and/or field offices external to this office; and (2) because we receive a very heavy volume of FOIA requests, we will process your request in line with our established policy of 'first in, first out' case processing." (*See* ECF No. 12-4, P. 2). HHS failed to produce the requested records within twenty days of August 26, 2014.

On September 30, 2014, Plaintiff filed its Complaint in this matter, seeking the same information originally sought in its FOIA request. (ECF No. 1). On November 6, 2014, Defendant HHS requested an additional eight days to file its responsive pleading, stating in relevant part as follows:

1. The Agency is making substantial progress in releasing some of the information at issue in the litigation. Specifically, referring to Plaintiff's Complaint, paragraph 5, which lists the information at issue, the Agency is planning to release Parts I and II of the Rate Filing Justifications the Issuers have filed with the Agency by November 15, 2014 on the Centers for Medicare & Medicaid Services public website.

2. The Agency is working toward issuing a predisclosure notification notice to the Issuers within the next 30 days to seek the Issuers' input on whether Part III of the Rate Filing Justification contains confidential commercial or financial information. Part III is the

---

[2] The HHS rate review regulations provide that "CMS promptly will make available to the public on its Web site the information contained in Part II of each Rate Filing Justification", and that "CMS will make available to the public on its Web site the information contained in Parts I and III of each Rate Filing Justification that is not a trade secret or confidential commercial or financial information as defined in HHS's Freedom of Information Act regulations, 45 CFR 5.65." *See* 45 C.F.R. § 154.215(h)(1)-(2). The rate review regulations further provide that CMS will "include information on its Web site concerning how the public can submit comments on the proposed rate increases that CMS reviews." *See* 45 C.F.R. § 154.215(h)(4).

part of the Rate Filing Justification that is most likely to contain Issuers' confidential commercial or financial information. The Agency is currently planning to give the Issuers 30 days to respond to the predisclosure notification. However, the Agency currently cannot estimate how long it will take the Agency to review the Issuers' responses to the predisclosure notification and to make a final disclosure decision for Part III of the Rate Filing Justification.

3. 42 U.S.C. § 300gg-94(a)(2) provides the Secretary of the Department of Health and Human Services with authority to ensure public disclosure of unreasonable premium rate increases and their justifications for all health issuers. Consistent with that statutory authority, the Secretary promulgated implementing regulations that provides for the public posting on the Centers for Medical & Medicaid Services website of rate filing justifications. 45 C.F.R. § 154.215(h). The implementing regulation divides the rate filing justification into three parts. Neither the statute nor the regulation sets a specific deadline for the public posting of the rate filing justifications.

(ECF No. 5, PP. 1-2). HHS filed its Answer on November 14, 2014, stating that Parts I and II of the RFJ's Plaintiff sought would be posted on the HHS website by that day, and Plaintiff acknowledges that HHS did post those Parts on its website by that day. (*See* ECF Nos. 7, ¶ 9; 28, P. 2).

Plaintiff then filed a Motion for Summary Judgment on January 30, 2015, requesting that the Court (1) declare that HHS's failure publicly to disclose rate filing information in sufficient time for the public to comment on proposed rate increases and for HHS to consider such comments when determining the reasonableness of such rate increases violated both HHS's own regulations and the FOIA; (2) require HHS immediately to produce all RFJs in connection with 2015 rates; and (3) declare that HHS must make public all RFJs for proposed 2016 and future year rate increases in time for Plaintiff and other members of the public to analyze and comment on those RFJs within a reasonable time before such proposed increases become final. On February 25, 2015, HHS requested an additional seven days to respond to Plaintiff's dispositive motion, up to and including March 9, 2015, stating as follows:

3. In the FOIA request at issue in this case, Plaintiff states their request for records as follows: (1) the identities of the issuers filing rates for Missouri to take effect in 2015; (2)

the rates those issuers propose to charge in 2015; (3) any information contained in Parts I and III of the Rate Filing Justifications that the issuers have not designated as trade secret; and (4) any Part IIs of the Rate Filing Justifications that have been filed. *See* [Doc.12-3, p.2]

4. Defendant posted Part I and Part II of Missouri issuers' 2015 Rate Filing Justifications for single risk pool compliant plans on the Center for Consumer Information & Insurance Oversight ("CCIIO") website in time for open enrollment for the 2015 plan year (November 15, 2014), and they are presently available to Plaintiff and the public. *See* http://www.cms.gov/CCIIO/Resources/Data-Resources/ratereview.html (last visited February 23, 2015).

5. Defendant has posted 2015 data from Parts I, II and III of Missouri issuers' "transitional" non-single risk pool compliant plans on the CCIIO website and these data are also presently available to Plaintiff and the public. *See id.*

6. Defendant intends to disclose to Plaintiff those portions of Part III of Missouri issuers' 2015 Rate Filing Justifications for single risk pool compliant plans which are responsive to Plaintiff's FOIA request and which are not subject to withholding as trade secret or confidential business or financial information. Defendant has requested that Missouri issuers provide marked-up copies of Part III of their 2015 Rate Filing Justifications for single risk pool compliant plans, to be disclosed to Plaintiff. Defendant anticipates that this disclosure will be made by March 6, 2015.

(ECF No. 13, PP. 1-2). On March 6, 2015, HHS produced to Plaintiff the Missouri Part III's Plaintiff requested. (ECF No. 28, P. 2). Furthermore, in a surreply filed March 30, 2015, HHS stated that for proposed rates for 2016 and future years, it would "publicly post all portions of the Missouri RFJs for single risk pool compliant plans that are not trade secret or confidential commercial or financial information" by the tenth business day after May 15. (ECF No. 23, P. 3). The Court therefore denied Plaintiff's Motion for Summary Judgment as moot, finding "the controversy between the parties no longer exists, as Plaintiff has received all the information it requested." (ECF No. 25, P. 4).

As stated above, Plaintiff filed the instant Motion for Attorneys' Fees on June 4, 2015, claiming that it is both eligible for and entitled to attorneys' fees. (ECF No. 28). Plaintiff maintains an award of $139,852.04 in attorneys' fees would be reasonable. (*Id.*).

**DISCUSSION**

Under FOIA, a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant has substantially prevailed "if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).[3] Under the latter provision, referred to as the "catalyst theory", a plaintiff has substantially prevailed if it can "(1) prove eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the release of the requested records; and (2) prove that [it] was entitled to fees under four factors that the court weighs in determining whether attorneys' fees are appropriate." *Deininger & Wingfield, P.A. v. Internal Revenue Service*, 2009 WL 2241569, at *3 (E.D. Ark. Jul 24, 2009) (citations omitted).[4]

To show that it is eligible for an award of attorneys' fees, Plaintiff here must prove "that prosecution of the action could reasonably be regarded as necessary to obtain the information, and…that the existence of the lawsuit had a causative effect on the release of the information." *Miller*, 779 F.2d at 1389 (citing *Ginter*, 648 F.2d at 471). "Though certainly a salient factor, the mere filing of the complaint and the subsequent release of documents is insufficient to establish causation." *Deininger*, 2009 WL 2241569, at *4 (internal quotations and citations omitted). *See*

---

[3] "[T]he plaintiff carries the burden of sustaining the request for attorney's fees, including the burden of showing that the plaintiff substantially prevailed." *Ginter v. Internal Revenue Service*, 648 F.2d 469, 471 (8th Cir. 1981) (citation omitted).

[4] The four factors are: "(1) the benefit to the public to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records which he seeks; and (4) whether the government's withholding of the records had a reasonable basis in law." *Miller v. U.S. Department of State*, 779 F.2d 1378, 1389 (8th Cir. 1985) (citation omitted).

*also Gahagan v. U.S. Citizenship and Immigration Services*, 2014 WL 4930479, at *2 (E.D. La. Oct. 1, 2014) (internal quotations and citations omitted) ("It is not enough to merely allege that because the documents were divulged after a lawsuit was filed, said information was released as a result of that suit.").[5] "Courts must also look at other factors, including the demands of the search, the agency's backlog of FOIA requests, and plaintiff's attempts to resolve the issue out of court." *Deininger*, 2009 WL 2241569, at *4 (citations omitted).

Upon consideration, the Court finds Plaintiff has failed to show that its suit was reasonably necessary, and had a substantive causative effect on the production of the requested information, for several reasons. *See Ginter*, 648 F.2d at 473. First, the Court's review of the record reveals Defendant did not voluntarily or unilaterally change its position in response to this lawsuit. Instead, CMS initiated its pre-disclosure notification process for information in Part I of the 2015 RFJs, and simultaneously began developing a new website to publicly post the information in Parts I, II, and III that were determined to be made public, in May, 2014—months before Plaintiff submitted its FOIA request. (Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees ("Defendant's Opp."), P. 12 (citing Supplemental McCune Declaration, ¶ 6)). While CMS did not initiate the pre-disclosure notification process with respect to Part III information until November 17, 2014, there is no indication that it did so in response to Plaintiff's lawsuit, rather than as part of its consistent action to comply with its own regulations.[6]

---

[5] "In short, 'eligibility' is largely a question of causation, answered by an examination of the agency's conduct in processing the request." *Lovell v. Department of Justice*, 589 F.Supp. 150, 154 (D.D.C. 1984) (internal quotations and citation omitted).

[6] Although Plaintiff objects to the delay necessitated by the process, HHS justifiably sought the input of issuers as to the presence of trade secret or confidential commercial or financial information prior to releasing the data. As noted by Defendant, although Plaintiff specifically did not request information in the RFJs that would be withheld under FOIA Exemption 4, "it was still necessary for Defendant to conduct pre-disclosure notification in order to determine

In fact, throughout this litigation HHS consistently acknowledged its obligation to provide the materials, and did in fact provide the materials upon completion of its search and determination as to which documents should be disclosed.[7] "Under these circumstances [Plaintiff's] suit was premature and thus not reasonably necessary." *Ginter*, 648 F.2d at 473.[8]

With respect to the other factors the Court is to consider, CMS presents undisputed evidence that in Fiscal Year 2014, it received 26,361 FOIA requests, and that it managed this heavy volume by instituting a "first in, first out" processing methodology. (Defendant's Opp., P. 8 (citing Supplemental Gilmore Declaration, ¶ 6)). While it may not have known the precise nature of Defendant's burden, Plaintiff did know that Defendant had received other requests related to the information at issue here, and that it was attempting to comply with its obligation to provide the information. Despite this knowledge, Plaintiff filed its lawsuit on September 30, 2014, only five weeks after Defendant acknowledged receipt of its initial FOIA request. *See Gahagan*, 2014 WL 4930479, at *2 (internal quotations and citation omitted) ("[W]hen plaintiffs in FOIA cases are aware that administrative problems are causing the government to delay in disclosing requested information, but pursue a FOIA lawsuit in spite of this knowledge, they are generally held not to have prevailed when the administrative problems are overcome, the

---

precisely what information issuers considered to be exempt from disclosure under Exemption 4, and therefore non-responsive to the request at issue in this litigation." (Defendant's Opp., P. 10).

[7] Defendant's consistent acquiescence and cooperation distinguish this case from *American Immigration Council v. U.S. Department of Homeland Security*, 2015 WL 1044534 (D.D.C. Mar. 10, 2015). In that case, the plaintiff filed suit after six months of discussion, during which the agency produced just two pages of records and stated no further responsive information existed. During the active prosecution of the plaintiff's suit, however, the agency produced at least 156 additional responsive documents.

[8] Plaintiff also contends that Defendant's commitment to post on its website all non-confidential Parts of the RFJ's by the tenth business day following May 15 constitutes a change in its position in response to this lawsuit. Defendant presents evidence, however, that CMS set the uniform RJF submission and public posting deadlines for policy reasons unrelated to this litigation. *See* McCune Supplemental Declaration, ¶ 7.

information is produced, and the plaintiff is unable to show that the lawsuit caused the production."). Defendant released a portion of the requested documents on November 14, 2014, and the remainder on March 6, 2015, slightly more than five months after Plaintiff commenced this action. Under these circumstances, "Plaintiff has presented no evidence to show that [Defendant's] ultimate disclosure of the requested documents resulted from the filing of [its] lawsuit, rather than merely [Defendant's] ability to overcome administrative problems." *Gahagan*, 2014 WL 4930479, at \*3; *see also Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F.Supp.2d 1, 4 (D.D.C. 2011) (internal quotations and citations omitted) ("If, rather than the threat of an adverse court order, an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit."). Plaintiff thus fails to satisfy the catalyst theory in order to show that it "substantially prevailed" in this litigation, and so its request for attorneys' fees must be denied. *See Gahagan*, 2014 WL 4930479, at \*3 (internal quotations and citations omitted) ("[T]he attorney fees provision of the FOIA was not meant to reward plaintiffs who impatient with justifiable delays at the administrative level, resort to the 'squeaky wheel' technique of prematurely filing suit in an effort to secure preferential treatment.").[9]

---

[9] In light of the above ruling, the Court need not consider whether Plaintiff would be entitled to attorneys' fees, nor must it address the wholly unreasonable amount of fees actually sought in this matter.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Consumers Council of Missouri's Motion for Attorneys' Fees (ECF No. 28) is **DENIED**.

Dated this 14th Day of August, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE